**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**Stacey D. Adams**<br>**UNITED STATES MAGISTRATE JUDGE** | **FRANK R. LAUTENBERG U.S. POST OFFICE & COURTHOUSE BUILDING**<br>**2 FEDERAL SQUARE**<br>**NEWARK, NJ 07102**<br>**973-645-6121** |

October 29, 2025

**<u>LETTER ORDER</u>**

Re:   ***Shah v. Costco Wholesale Corporation***
      Case No. 2:23-cv-21286 (JKS) (SDA)

Dear Counsel:

Pending before the Court is the Unopposed Motion for Preliminary Approval of a Collective Action Settlement (the "Motion") filed by Plaintiff Safiyyah Shah ("Shah" or "Plaintiff"). (ECF No. 42). Regrettably, this Court is compelled to ADMINISTRATIVELY TERMINATE the Motion at this juncture, because the submissions in support of the Motion require clarification. The parties are directed to file a renewed Motion in accordance with the guidance that is provided herein.

The parties are more-than familiar with the allegations and procedural history of this case. Briefly, this case arises out of the employment by Defendant Costco Wholesale Corporation ("Costco") of Shah as an hourly-paid, non-exempt supervisor at Costco's distribution center in Newark, New Jersey. (ECF No. 1 ¶¶ 3, 13). Shah alleges that Costco violated, *inter alia*, the Fair Labor Standards Act ("FLSA") by failing to pay hourly-paid, non-exempt supervisors in New Jersey such as herself for all hours worked, whether those hours were straight time or time-and-a-half for time worked in excess of forty hours in a week: (1) before their shifts, during which time they were required to unlock and open gates, deactivate alarms, and conduct security sweeps; and (2) after their shifts, during which time they were required to conduct security sweeps, activate

alarms, and lock and close gates. (*Id.* ¶¶ 4, 5, 20, 21, 23). Thus, Shah alleges such supervisors performed off-the-clock work both pre-shift and post-shift. Shah asserted her claims for relief individually and as a collective action for "[a]ll hourly-paid, non-exempt supervisors employed by [Costco] in New Jersey." (*Id.* ¶¶ 6, 29). Shah asserted that these supervisors "are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plans (i.e. [Costco] failing to pay hourly-paid supervisors for pre-and-post-shift work …); and (c) their claims are based upon the same factual and legal theories." (*Id.* ¶ 30).

The parties reached a settlement of this dispute following nearly two years of litigation. However, as the proposed settlement is being presented on behalf of a settlement collective that may be comprised of at least five individuals in addition to Shah (*see* ECF No. 42-1 pp. 7–9, 17, 20), and as the rights of those five individuals are at issue here, the Court must scrutinize the proposed settlement agreement. The Court's concerns with the proposed settlement agreement are set forth below.

First, the Court observes that the proposed settlement agreement (ECF No. 41) – which would be provided to the members of the settlement collective and which would be available for public view – is replete with errors that are potentially confusing and would reflect poorly on counsel and on this Court if it were to be approved. What follows is an exemplary list of concerns that this Court has concerning the settlement agreement as currently drafted:

- Paragraph 1.18 purports to list those "[e]xcluded from the definition of *1.19* 'Potential Settlement Collective Member.'" (ECF No. 41 ¶ 1.18 (emphasis added)). However, Paragraph 1.19 concerns the "Preliminary Approval Order," with no reference to potential settlement collective members therein.

- Paragraph 1.25 purports to define the "Settlement Collective" as "Plaintiff Safiyyah Shah all individuals." (*Id.* ¶ 1.25). In the very least, the word "and" appears to be missing between "Shah" and "all individuals."

2

- Paragraphs 3.1 and 4.1 contain references concerning "a non-supervisor" as to the settlement collective. (*Id.* ¶¶ 3.1, 4.1). It is the Court's understanding that the settlement collective members here worked as non-exempt supervisors, not non-supervisors. The distinction is subtle, but important. Thus, it would appear the phrase in each of these paragraphs should perhaps be changed to "non-exempt supervisor," meaning the job position that is at the heart of this case.

- Paragraph 4.1 also contains a reference to "the *pro rate* value of weeks worked," which perhaps should be "*pro rata*." (*Id.* ¶ 4.1).

- Paragraph 3.2 requires notice to be sent to the settlement collective members via "first Collective mail." (*Id.* ¶ 3.2). The phrase should perhaps be "first class mail."

- There are additional typographical errors in Paragraph 1.4 (*i.e.*, as written, the sentence reads in part that an approved claim is comprised of a claim form that "is ... (b) is fully completed and physically signed or electronically signed" and "is … (c) satisfies the conditions of eligibility"), Paragraph 2.1(c) (*i.e.*, as written, the sentence reads that Plaintiff shall "request that the Court … [p]reliminarily certifying the Settlement Collective"), and Paragraph 10.11 (*i.e.*, the initial sentence refers to Plaintiff as "he"). (*Id.* ¶¶ 1.4, 2.1, 10.11).

- The copy of the settlement agreement submitted to the Court is executed by Shah, but not by Costco. (*Id.* pp. 18, 19).

It should not be necessary for the Court make assumptions about what the parties meant to set forth in the proposed settlement agreement. *See United States v. Pena*, Crim. No. 24-00071, 2024 WL 5417430, at *2 (W.D. Tex. Nov. 27, 2024) (holding a party's "failure to submit a suitable proposed order for the Court's signature doesn't just underscore the hasty, last-minute nature of [the] request – it also supplies an additional reason to deny [the] Motion"). The parties are therefore directed to file a corrected version of the proposed settlement agreement with their renewed Motion.

Second, the reversionary aspect of the proposed settlement agreement may be problematic. As currently constituted, the settlement amount allocated to any settlement collective member who declines to opt into the settlement will revert to Costco. (ECF No. 41 ¶ 4.1 ("The settlement allocation for each putative Collective Member who does not opt into this Settlement Agreement

3

shall revert to [Costco]."); *see id.* ¶ 4.9 ("Following the expiration of the Claims Period and issuance of Settlement Payments, and after payment of any outstanding Settlement Administration Expenses, any unclaimed or leftover amounts in the Escrow Account, including but not limited to any amounts that were allocated to individuals in the Settlement Collective who did not opt into this Settlement Agreement or any amounts stemming from uncashed checks issued to Settlement Collective Members, shall remain the property of [Costco]."); ECF No. 42-1 p. 9 (stating "any unclaimed amounts will revert to [Costco]")).

In stark contrast, any portion of the legal fees sought by Shah's counsel or any portion of the service award sought by Shah that this Court might deny are to be distributed to the members. (*See, e.g.*, ECF No. 41 ¶ 8.2 ("Should the Court award less than the amount sought by Collective Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this section shall remain in the Settlement Fund and be distributed to Settlement Collective Members as Settlement Payments."); *id.* ¶ 8.6 ("Should the Court award less than the amount sought as payment for the Individual Settlement of Non-Wage Claims, the difference in the amount sought and the amount ultimately awarded pursuant to this section shall remain in the Settlement Fund and be distributed to Settlement Collective Members as Settlement Payments.")). The Court questions why any money left unclaimed by a member of the settlement collective would not be proportionally distributed to those who opted into the settlement collective. Generally, such revisionary provisions are disfavored, and the preferred approach is for such amounts to be distributed to the participating members. *See e.g. Katz v. DNC Servs. Corp.*, No. 16-cv-05800, 2024 WL 454942, at *10 (E.D. Pa. Feb. 6, 2024) (noting favorably in FLSA case that money remaining in settlement fund due to checks not being cashed would be distributed to members who had cashed checks in an amount proportional to their individually-assessed damages) (citing *In re*

*Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 726–27 (3d Cir. 2023)); *Payton-Fernandez v. Burlington Stores, Inc.*, 671 F. Supp. 3d 512, 531 (D.N.J. Apr. 28, 2023) (expressing concern in FLSA case that the proposed settlement agreement contained a provision by which unclaimed portions of settlement fund would revert to defendant); *Brown v. Kadence Int'l, Inc.*, No. 22-cv-01097, 2023 WL 2614587, at *9 (E.D. Pa. Mar. 23, 2023) (noting approval in FLSA case that the proposed settlement agreement provided for a non-reversionary settlement fund, and that any unredeemed checks would be redistributed among members to boost their recovery). Accordingly, the parties are directed to address the reversionary provision in the renewed Motion.

Third, the Motion fails to address whether it is necessary to demonstrate if six total members are sufficient to satisfy the numerosity requirements of Federal Rule of Civil Procedure 23(a)(1), which sets forth a numerosity requirement for class actions. The Court believes that the parties need not demonstrate the element of numerosity in support of the proposed settlement agreement in this FLSA collective action. *See Beauregard v. Hunter*, No. 16-05689, 2019 WL 9355826, at *6 (D.N.J. Sept. 27, 2019) (approving plan to proceed with a collective action rather than a class action due to concerns that the numerosity requirement would not be met, and "because a collective action offers substantially the same procedural benefits as a class action under the circumstances"). However, the analysis is complicated by the fact that the proposed settlement agreement would also require the release of non-FLSA claims, such as the related New Jersey state law claims asserted in the complaint. (ECF No. 41 ¶ 1.20). The parties should address this issue in the renewed Motion, as their current papers are silent on this issue. (*See* ECF No. 42-1 p. 21 (acknowledging, without more, that this matter would not meet the numerosity requirement for a class certification review under Fed. R. Civ. P. 23)).

Fourth, for the purposes of the Court's review of the procedural history of the litigation, the parties should clarify whether they engaged in mediation with the assistance of a mediator. (*See* ECF No. 33 (September 13, 2024 order directing that "parties shall engage in private mediation by December 15, 2024")).

In the resubmitted Motion, the parties shall set forth dates certain for the deadlines for steps to be taken in furtherance of the proceedings by the parties, the settlement collective, and the Court. (*See, e.g.*, ECF No. 41-3 pp. 3, 4 (leaving blanks for deadlines for notice, the claims process, and the filing of a motion for final approval, and suggesting that papers submitted for final approval of the settlement are to "be filed no later than thirty (30) days after the Claims Deadline"); *see also* ECF No. 42-2 at pp. 3, 4 (same)). The Court will adjust any dates provided by the parties if necessary. For good cause appearing:

**IT IS, on this <u>29th</u> day of <u>October</u>, <u>2025</u> hereby ORDERED as follows:**

1.  The Unopposed Motion for Preliminary Approval of a Collective Action Settlement is ADMINISTRATIVELY TERMINATED without prejudice.

2.  The Clerk of the Court is respectfully directed to designate ECF No. 42 as terminated.

3.  The parties are directed to file a renewed Motion in accordance with the guidance provided by the Court in this Letter Order by November 21, 2025.

    */s/ Stacey D. Adams*
    Hon. Stacey D. Adams
    United States Magistrate Judge

cc:    Hon. Jamel K. Semper, U.S.D.J.
       All counsel of record