**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SAFIYYAH SHAH, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> COSTCO WHOLESALE CORPORATION, <br><br> Defendant. | Civil Action No. 2:23-cv-21286 (JKS) (SDA) <br><br> **OPINION GRANTING PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT** <br><br> May 29, 2026 |

**STACEY D. ADAMS, United States Magistrate Judge**

This matter comes before the Court on a Renewed Motion to Preliminarily Approve a Collective Action Settlement, Approve the Notice and Claims Process, and Set a Deadline for a Motion for Final Approval of the Settlement filed by lead plaintiff Safiyyah Shah ("Shah") on behalf of herself and all others similarly situated (the "Motion"). (ECF No. 49). Defendant Costco Wholesale Corporation ("Costco") does not oppose the Motion. For the reasons stated herein, the Motion is **GRANTED**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Shah was employed by Costco as an hourly-paid, non-exempt supervisor working in a distribution center in Newark, New Jersey supporting Costco's retail operations from May 2022 to June 2023. (ECF No. 1 ¶¶ 3, 13). Shah alleges that Costco violated the Fair Labor Standards Act ("FLSA"), the New Jersey Wage and Hour Law ("NJWHL"), and the New Jersey Wage Payment Law ("NJWPL") by failing to pay hourly, non-exempt supervisors in New Jersey such as herself for time worked: (1) before their shifts, during which they were required to unlock and open gates, deactivate alarms, and conduct security sweeps; and (2) after their shifts, during which

1

they were required to conduct security sweeps, activate alarms, and lock and close gates. (*Id.* ¶¶ 4, 5, 20, 21, 23).

The complaint was filed on October 19, 2023. (ECF No. 1). Costco answered on December 26, 2023. (ECF No. 5). Litigation then ensued for nearly two years. Following the filing of a joint discovery plan by the parties on February 5, 2024, an initial scheduling conference was conducted by then Magistrate Judge Edward Kiel on February 9, 2024, and an initial pretrial scheduling order setting forth a discovery schedule was issued on February 13, 2024. (ECF Nos. 12, 13). The parties then engaged in active discovery and, eventually, settlement negotiations, as illustrated by the subsequent status reports, discovery-dispute letters, and reports of settlement discussions filed on April 5, 2024, April 22, 2024, June 3, 2024, June 20, 2024, June 24, 2024, July 9, 2024, August 16, 2024, and September 10, 2024. (ECF Nos. 17, 18, 22, 24, 26, 28, 30 and 32). On September 13, 2024, the parties were directed to engage in private mediation. (ECF No. 33). On December 20, 2024, the parties reported that they had reached a settlement and were preparing a collective settlement agreement. (ECF No. 35).

On March 22, 2025, Shah filed the initial motion for the preliminary approval of a settlement of this collective action (ECF No. 42), for which the parties consented to the Undersigned's jurisdiction to resolve. (ECF No. 45).[1] The proposed settlement agreement was presented on behalf of a settlement collective anticipated to include five individuals in addition to Shah. (ECF No. 42-1 pp. 3-5, 13). However, on October 29, 2025, the initial motion was administratively terminated without prejudice because: (i) the proposed settlement agreement contained confusing internal references, grammatical errors, misidentifications, and lacked an

---

[1] The parties have also consented to the Undersigned's jurisdiction for the eventual motion for final approval of the collective action settlement. (ECF No. 45).

executing signature on behalf of Costco; (ii) the Court sought additional briefing as to the reversionary provision in the agreement, which provided that any settlement amount allocated to a collective member who declined to opt-in would revert to Costco, as opposed to being proportionally distributed among the remaining members of the collective; (iii) clarification was needed on the effect of the settlement upon the New Jersey state wage claims; and (iv) the parties failed to specify whether they utilized the assistance of a mediator in reaching the settlement. (ECF No. 46). This renewed Motion was filed addressing these issues. (ECF No. 49).

## PROPOSED SETTLEMENT

### I.    Corrections

The Court has compared the version of the settlement agreement originally filed by the parties in support of the initial motion with the version filed in support of the renewed Motion. (ECF Nos. 41, 48). The parties have corrected the drafting issues highlighted by the Court in the October 2025 Order. In addition, the parties corrected several other errors independently, thereby illustrating the care they exercised in reviewing the revised Settlement Agreement prior to submission. (*See, e.g.*, ECF No. 48 p. 5 ¶ 1.25 (correcting "all individuals who . . . submits" to "all individuals who . . . submit"); *id.* p. 9 ¶ 4.4 (correcting "their" to "his or her"); *id.* p. 10 ¶ 5.2 (correcting "Released Class Claims" to "Released Claims"); *id.* p. 11 ¶ 6.1 (correcting a double period in the last sentence)).

### II.    Proposed Settlement Collective

The Settlement Collective is defined as:

> Plaintiff Safiyyah Shah and all individuals who: (i) were employed by Costco as a non-exempt supervisor at a Merchandise Delivery Operation ("MDO") at any time from October 19, 2017 through December 13, 2024; (ii) were regularly assigned to a MDO located within New Jersey during that period; and (iii) submit a valid claim

3

form opting into the Settlement Collective pursuant to this Agreement or previously released claims covered by this Agreement.

(*Id.* p. 5 ¶ 1.25).[2]

Through discovery, the parties have determined that only Shah and five other individuals comprise the collective. (*Id.* p. 3 ¶ 1.18; ECF No. 49-1 p. 3). Costco advised that non-exempt supervisors at non-MDO locations do not perform opening and closing duties, which Shah herself confirmed in her current capacity as an employee at a non-MDO Costco location. (ECF No. 49-1 pp. 3-4). In addition, it is uncontested that Costco provided punch records and pay rates for the putative collective members to Shah's Counsel during the discovery process, thereby allowing the parties to evaluate potential damages and to structure a fair settlement. (*Id.* p. 4).

### III.   Settlement Agreement

The Settlement Agreement provides for a total settlement fund of $35,000, which will include: (i) attorneys' fees in the maximum amount of $17,500, which is 50% of the total fund and which will be subject to the Court's review for the motion for final approval of the settlement; (ii) reimbursement of up to $4,500 in litigation costs, which will be subject to the Court's review for the motion for final approval; (iii) a $2,500 service award to Shah for her role in prosecuting the action; and (iv) payments to the participating collective members from the remaining $10,500 in settlement funds, with any allocation for a putative collective member who does not opt-in

---

[2] The definition of the Settlement Collective excludes:

(1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest; (3) persons who properly execute and file a timely request for exclusion from the Settlement Collective; and (4) the legal representatives, successors or assigns of any such excluded person.

(*Id.*).

reverting to Costco. (ECF No. 48 pp. 5-6 ¶ 1.27; *id.* pp. 8-10 ¶¶ 4.1, 4.9; *id.* pp. 12-13 ¶¶ 8.1, 8.5). In response to the Court's query in the October 2025 Order, the parties report that they were able to reach the settlement without engaging in private mediation (ECF No. 49 p. 5 n. 1; *id.* p. 21), thereby saving further litigation expense. However, the Court notes that settlement negotiations occurred over several months (ECF Nos. 17, 18, 22, 24, 26, 28, 30 and 32) and after extensive discovery.

Collective members who submit valid claim forms will receive a proportional share of the settlement funds, based on the number of weeks that they worked at a qualifying MDO. Weeks worked at the Newark, New Jersey MDO will receive six times (6x) the weight of weeks worked at other New Jersey MDOs, to reflect the additional steps and time allegedly required to open and close that location. (ECF 49-1 p. 6; ECF No. 48 pp. 8-9 ¶ 4.1). This is to reflect the fact that, as Shah acknowledged, only the Newark location had locked parking lot gates that were purportedly unlocked and locked by the collective members as part of their job duties. (ECF No. 49-1 p. 6).

## IV.    Notice and Timing

Pursuant to the Settlement Agreement, as soon as practicable following the issuance of this Order, Costco will compile the last known addresses of the putative collective members. (ECF No. 48 at ECF-designated p. 8, ¶ 3.1). Notice shall be sent by Defendant to collective members via first class mail no later than 28 days after this Order is entered. (*Id.* at ECF-designated p. 3 ¶ 1.16 and p. 8 ¶ 3.2). The Settlement Agreement provides a process for tracking down those members of the collective whose mail is returned as undeliverable. (*Id.* at ECF-designated p. 8 ¶ 3.3). The collective members would then have 60 days from the date of the Notice to submit the provided claim form. *(Id.* p. 2 ¶ 1.5). Thirty days thereafter, the parties would move for final approval of the settlement, attorneys' fees, costs, and the service award. (*Id.* p. 6 ¶ 2.2; *id.* p. 26 ¶ 12). Costco itself

would then process and issue settlement payments to the opt-in collective members within 30 days of the Court's final approval of the settlement. (*Id.* p.10 ¶ 4.8).

A copy of the proposed Notice to class members was submitted with Shah's Motion. (ECF No. 48 at ECF-designated p. 22). It notifies collective members of the amount of the settlement, and provides generally that collective members will get a share of the total settlement payment, after attorneys' fees, expenses, and a service award to Shah, based upon the amount of weeks they worked. (*Id.*). The Notice does not, however, set forth the requested amounts of attorneys' fees, expenses, or the service award. (*Id. passim*). Nor does it mention that collective members who worked in the Newark, New Jersey MDO will get a multiplier of 6x. Finally, the Notice is bereft of any mention that, if the collective members opt-in to the settlement, they are releasing not only their FLSA claims but their claims under the NJWHL and NJWPL. (*Id. passim*).

## **GOVERNING LAW AND ANALYSIS**

### I. **Preliminary Approval of Collective Settlement**

This lawsuit is a "collective action," because Shah has brought it on behalf of herself and a small number of other similarly-situated employees. *Chen v. Ron Hibachi Grill Supreme Buffet Inc.*, No. 23-cv-2591, 2024 WL 4906033, at *2 (D.N.J. Nov. 27, 2024). The Court is authorized to approve a settlement in a collective action under the FLSA, 29 U.S.C. § 216(b). *Beauregard v. Hunter*, No. 16-cv-5689, 2019 WL 9355826, at *5 (D.N.J. Sept. 27, 2019); *Clarke v. Flik Int'l Corp.*, No. 17-cv-1915, 2020 WL 747067, at *1 (D.N.J. Feb. 14, 2020). The Court must determine whether the settlement: (1) resolves a bona fide dispute that reflects a reasonable compromise over issues, such as FLSA coverage or the computation of back wages, that are actually in dispute; (2) is fair and reasonable to the employees at issue; and (3) furthers the implementation of the FLSA. *Chen*, 2024 WL 4906033, at *3; *Brown v. Kadence Int'l, Inc.*, No. 22-cv-1097, 2023 WL 2614587,

at \*6 (E.D. Pa. Mar. 23, 2023); *Hall v. Nat'l Metering Servs., Inc.*, No. 20-cv-1921, 2021 WL

3511127, at \*1 (D.N.J. Aug. 9, 2021); *Pulido v. Fredco Landscaping, Co.*, No. 17-cv-4470, 2020

WL 13828987, at \*2 (D.N.J. Mar. 23, 2020).

In evaluating whether a collective settlement is "fair and reasonable," the Court applies the

so-called *Girsh* factors to the extent they may apply in a given case, even though the case does not

concern a class action brought under Federal Rule of Civil Procedure 23. *Beauregard*, 2019 WL

9355826, at \*5; *Chen*, 2024 WL 4906033, at \*4 n.2. Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the [collective] to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the [collective] action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Brown*, 2023 WL 2614587, at \*7 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *see*

*Clarke*, 2020 WL 747067, at \*1 (stating and quoting same); *Cruz v. JMC Holdings, Ltd.*, No. 16-

cv-9321, 2019 WL 4745284, at \*4 (D.N.J. Sept. 30, 2019) (same).

## II.    Bona Fide Dispute

The Court is, without question, presented with a bona fide dispute in this case. Shah alleges

that she and her fellow hourly-paid, non-exempt MDO supervisors were required to engage in

procedures for the opening and closing of the MDO facilities, including unlocking and locking the

gates, arming and disarming the security systems, and conducting security sweeps, without being

compensated for the time in which they performed those tasks. (ECF No. 49-1 p. 8). In stark

contrast, Costco contends that the non-exempt MDO supervisors did not perform these duties and,

to the extent they did, the time spent was *de minimis* (less than 30 seconds to 3 minutes) and, in

any event, could have been recorded and corrected on exception logs. (*Id.*). The bona fide nature of the dispute is encapsulated by the nearly two years spent by the parties engaging in contentious discovery before reaching a settlement. Therefore, the Court preliminarily finds that a bona fide dispute exists.

### III.     Fair and Reasonable

#### A.      Complexity, Expense, and Likely Duration

The parties have successfully avoided greater litigation expenses and expenditure of time by reaching a settlement. The possibility of subsequent contested discovery, dispositive motions, and an eventual trial have been eliminated by reason of the settlement. The continued litigation would have undoubtedly extended for years into the future and resulted in significant expenditures on both sides. Therefore, the first *Girsh* factor weighs in favor of settlement.

#### B.      Reaction of Collective Members to Settlement

As notices of this settlement have yet to be sent out to the members of the collective, the reaction to the settlement beyond Shah's positive reaction is unknown. As a result, the second *Girsh* factor is neutral at this juncture.

#### C.      Stage of Proceedings and Amount of Discovery Completed

As illustrated by the status reports and dispute letters filed by the parties on this docket over the course of nearly two years, the parties have engaged in substantial discovery involving the exchange of payroll records, work schedules, exception logs, documentation of timekeeping policies, and supervisory responsibilities. Consequently, the parties assessed the strengths and weaknesses of their respective claims and defenses. Therefore, the Court preliminarily finds that the third *Girsh* factor favors approval of the settlement.

**D.** **Risks of Establishing Liability, Establishing Damages, and Maintaining Collective**

Although Shah felt confident about her claims, she faced significant opposition from Costco. Without question, Shah would face significant risks at trial attempting to establish Costco's liability, countering Costco's efforts to limit damages, and keeping the collective members unified. Costco continues to deny that it underpaid Shah and her fellow non-exempt MDO supervisors for the time that they spent on pre-shift and post-shift duties. Costco asserts a number of defenses, including but not limited to, that these supervisors were paid for all hours worked, as captured on payroll and security records, that the opening and closing duties were performed by exempt store managers and, to the extent the supervisors performed these duties it was a *de minimis* amount of time. The proposed settlement relieves Shah and the collective members from facing the risks of proving liability through fact-intensive inquiries about specific shifts, an analysis of payroll records, and expert opinions concerning the methods of timekeeping. Importantly, the proposed settlement eliminates the risk that the putative collective might not be approved at all. Therefore, the Court preliminarily finds that an analysis under the fourth, fifth, and sixth *Girsh* factors favors approval of the settlement.

**E.** **Ability of Costco to Withstand a Greater Judgment**

The parties advise the Court that this factor was not considered during the settlement negotiations. (ECF No. 49-1 pp. 13-14). Although the Court has little doubt that a retailer of Costco's magnitude can withstand a judgment larger than $35,000 – as has repeatedly been recognized within this District under similar circumstances – the relative financial resources of a defendant do not themselves render a settlement unreasonable. *See, e.g.*, *Oliver v. BMW of N.A., LLC*, No. 17-cv-12979, 2021 WL 870662, at *8 (D.N.J. Mar. 8, 2021); *Yaeger v. Subaru of Am., Inc.*, No. 14-cv-04490, 2016 WL 4541861, at *11 (D.N.J. Aug. 31, 2016). "[T]he fact that

9

[defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . members are entitled to under the theories of liability that existed at the time the settlement was reached." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). Further, this factor is less significant when, as here, the maximum potential damages ($36,744 inclusive of treble damages) are limited in nature. (ECF No. 49-1 p. 14). Therefore, the Court finds the seventh *Girsh* factor weighs in favor of approval of the settlement notwithstanding Costco's ability to pay more.

### F.        Reasonableness of Settlement

When weighing the best possible recovery by Shah and the collective members against the risks of litigation, it is apparent that this settlement presents a positive result for them. The parties advise the Court that Shah herself, after a review of the relevant payroll records and other discovery, "estimated that she and the five other collective members were entitled to $12,248.00 in unpaid wages (amounting to $36,744, inclusive of treble damages under the [related state law]), based on an assumption that they worked 15 unpaid minutes per opening/closing shift." (ECF No. 49-1 p. 14 (citing ECF No. 50, Decl. of Pl. Counsel, ¶ 7)). The proposed settlement, in turn, would provide "at least $10,500 to Plaintiff and the five other collective members . . . , compensating them for wages and treble damages based on approximately 6 minutes per shift at Newark MDOs and 1 minute per shift at other locations." (*Id.*). Thus, collective members will recover roughly 28.58% of their maximum damages assuming they prevailed and were awarded treble damages. Similar percentages have been approved in other collective actions. *See, e.g.*, *Chen*, 2024 WL 4906033, at *5 (approving a settlement awarding collective members roughly 24.35% of alleged damages). Given the extent to which Costco contests the amount of time actually spent by Shah and the collective members in their alleged pre-shift and post-shift work duties, the proposed

settlement is a reasonable compromise that would provide meaningful compensation while simultaneously avoiding the risks and uncertainty of litigation. And finally, it is apparent to the Court that the proposed settlement is the product of arms-length negotiations between parties represented by competent counsel, and that there is no indication that the proposed settlement was reached via fraud or collusion. Therefore, the Court preliminarily finds that an analysis under the eighth and ninth *Girsh* factors favors approval of the settlement.

## IV.    Purpose of FLSA is Furthered

By posting the proposed settlement on the docket for public view and by eschewing a confidentiality provision that would limit the ability of Shah and the collective members to discuss this case, the parties have furthered the purpose of the FLSA to protect employees from being underpaid. *Hall*, 2021 WL 3511127, at *2; *Brown*, 2023 WL 2614587, at *10. It is further well-settled law that this type of settlement is considered to be limited in scope, in that the collective members are only waiving claims under the FLSA, NJWHL, and NJWPL – and are not providing a broader release of any and all claims. (ECF No. 49-1 p. 16).[3] The release is limited to only those individuals who opt-in to the collective and is further limited in temporal scope. (ECF No. 48). Therefore, the Court preliminarily finds that the proposed settlement furthers the laudable purposes of the FLSA.[4]

---

[3] Shah will be providing a broader release of claims in exchange for her service award. (ECF No. 49-1 p. 16). Given the additional consideration she is receiving, the Court does not find this to be a barrier for settlement.

[4] The parties argue that a determination as to whether a settlement furthers or frustrates implementation of the FLSA requires the Court to consider three objectives, *i.e.*, combatting inequalities in bargaining power between employers and employees, ensuring widespread employer compliance with the FLSA, and honoring the private-public character of employee rights. (ECF No. 49-1 p. 15). However, the parties rely upon caselaw from the Middle District of Pennsylvania to support that proposition. (*Id.* (citing *Ortiz v. Freight Rite, Inc.*, No. 21-cv-1060,

## V.        Addressing the Reversionary Clause

In the October 2025 Order, the Court expressed concerns that the proposed settlement agreement provided that any amount allocated for a collective member who does not opt-in will revert to Costco, rather than be proportionally distributed among those members who opted-in. (ECF No. 46 pp. 3-4 (discussing provisions that are now located at ECF No. 48 pp. 8-10 ¶¶ 4.1, 4.9)). The parties defend those provisions by pointing out that, while courts frown upon such reversionary clauses in Rule 23 class actions, courts frequently permit such provisions in cases such as the instant case where there are not many collective members and where collective members must affirmatively opt-in before they are entitled to a payment and are bound by the settlement terms. (*See* ECF No. 49-1 pp. 17-18 (listing cases)). In addition, the parties convincingly argue that "it is in Costco's interest to have *the entire* putative collective participate, so that the company obtains the most releases," and that Costco would prefer to be free of the threat of future individual litigation by the collective members rather than have any portion of the settlement fund revert to it. (ECF No. 49-1 p. 18 (emphasis in original)). Thus, the parties argue, it would inure to Costco's ultimate benefit to cooperate in notifying the putative collective members, as opposed to having any portion of the settlement fund returned. Further, since funds would only be returned to Costco for those individuals who affirmatively elect not to opt-in, Costco would not be receiving a windfall. As a result, the parties have adequately addressed the Court's concerns regarding the reversionary provision.

---

2021 WL 5988582 (M.D. Pa. Dec. 17, 2021), and *Haley v. Bell-Mark Techs. Corp.*, No. 17-cv-1775, 2019 WL 1925116 (M.D. Pa. Apr. 30, 2019))). The courts within the District of New Jersey, as can be seen in the caselaw cited in this Opinion, utilize a less structured analysis. This Court has been guided by the latter.

## VI.    Addressing Release of New Jersey State Law Claims

In the October 2025 Order, the Court expressed concerns about the provision of the proposed settlement agreement that required opt-in collective members to release the related New Jersey state law claims. (ECF No. 46 p. 5 (discussing provision that is now located at ECF No. 48 p. 4 ¶ 1.20)). The parties provide caselaw demonstrating that courts regularly approve the release of related state wage claims by collective members who opt-in to FLSA collective settlements in view of the superior due process protections provided thereunder, and that such releases do not transform a settlement into one governed by Rule 23. (ECF No. 49-1 p. 20 (listing cases)). This caselaw is aligned with the holdings emanating from the courts within the District of New Jersey. *See Chen*, 2024 WL 4906033, at *2 (approving release of related state law claims in an FLSA settlement); *Brown*, 2023 WL 2614587, at *5 (noting that if putative collective members choose not to opt-in, they are permitted to bring a separate suit later, in stark contrast to Rule 23 opt-out class actions wherein class members are barred from relitigating claims if they fail to affirmatively exclude themselves). The parties also correctly point out that there is no requirement that the settlement of related state law claims in a FLSA collective action must be approved by the Court. *See Chen*, 2024 WL 4906033, at *3 n.1; *Cruz*, 2019 WL 4745284, at *3 n.2; *Davis v. Essex Cnty.*, No. 14-cv-1122, 2015 WL 7761062, at *2 n.1 (D.N.J. Dec. 1, 2015). In addition, the proposed opt-in form for each collective member provides in plain verbiage that by submitting a claim form, that member:

> releases any claim I may have against [Costco] that relates to the payment or non-payment of wages, including but not limited to claims under the Fair Labor Standards Act, the New Jersey Wage and Hour Law, and the New Jersey Wage Payment Law.

(ECF No. 48 p. 20).

## VII.   Appointment of Brown, LLC as Interim Collective Counsel

Despite including language in the proposed Order seeking to have Brown, LLC appointed as Collective Counsel, neither Plaintiff's Notice of Motion nor the supporting memorandum of law sought or addressed such relief. (ECF Nos. 49 and 49-1). However, the supporting declaration filed by Nicholas Conlon, Esq. of Brown, LLC sets forth the firm's experience in handling similar collective claims and provides an Exhibit with the firm's resume, including its experience litigating class and collective matters and a list of representative matters. It therefore appears that Brown, LLC is well-qualified to serve as Collective Counsel. Accordingly, Brown, LLC is hereby appointed as interim Collective Counsel. However, they are reminded of the need to specifically address this matter in their motion for final approval.

## VIII.   Service Award, Attorneys' Fees, and Expenses

The settlement provides for a service award to Shah of $2,500, attorneys' fees up to the amount of $17,500, and costs up to the amount of $4,500, all to be deducted from the settlement fund. (ECF No. 48). The attorneys' fee award, if granted in full, amounts to 50% of the total settlement fund. These requests will be addressed in the context of an eventual motion for final approval. However, at a preliminary glance, they appear to be reasonable.

The service award to Shah of $2,500 reasonably compensates her for initiating this matter and the significant amount of work she contributed toward reaching this resolution. It is also commensurate with similar service awards in this district for FLSA cases. *See, e.g.*, *Brown*, 2023 WL 2614587, at *10 (approving $2,500 service award in an FLSA case). It should be noted that, in exchange for this award, Shah will provide Costco with a broader release of claims than the rest of the collective, providing further justification for the higher payment.

14

The request for attorneys' fees also will be addressed in conjunction with the eventual motion for final approval, as some of the factors to be assessed in approving a fee award are not known at this juncture. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000) (requiring a court weighing an attorneys' fees award to assess several factors, including whether any collective members object to the amount sought); *Brown*, 2023 WL 2614587, at *11 (holding a court should postpone consideration of attorneys' fees until there is an assessment of the degree of opt-in participation in the settlement and the effectiveness of the notice). Indeed, Shah's counsel specifically states that they are not seeking approval of an attorneys' fees award at this time, but will file a separate motion at the time of final approval. (ECF No. 49-1 p. 23).

The Settlement Agreement provides that the amount of attorneys' fees that will be sought is a maximum of $17,500, which represents 50% of the total settlement amount of $35,000. Counsel explains that, while at first glance this may appear to be a large portion of the total settlement fund, it is far less than the lodestar in this matter. Specifically, counsel certifies that, as of the date of filing, 151.6 hours had been spent by attorneys at various levels in the firm. (ECF No. 50 ¶ 10). Using a blended hourly rate of $371.83,[5] the lodestar would be $56,370. (*Id.*). The retainer agreement between Shah and counsel provided that counsel would be paid the greater of either (i) the hourly fees incurred, or (ii) 40% of the total gross recovery. (*Id.* ¶ 11). Thus, the proposed fee award is less than counsel would have been entitled to under the terms of the retainer agreement, rendering it inherently reasonable. (*Id.*). Further, attorney fee awards that comprise 50% of the settlement fund have been approved in this jurisdiction in FLSA collective actions. *See,*

---

[5] The Court finds the blended rate of $371.83 to be reasonable and commensurate with attorneys of like experience in this geographic area. *See, e.g.*, *Chen*, No. 2024 WL 4906033, at *7 (approving proposed hourly rates of $200 for paralegals, $275 for law clerks, $325 for associates, and $450 for partners); *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 18-cv-1007, 2019 WL 5394751, at *11 (W.D. Pa. Oct. 22, 2019) (accepting proposed rates of up to $650 per hour).

*e.g.*, *Hall*, 2021 WL 3511127, at *1 (approving a combined award for attorneys' fees and costs in excess of 50% of the settlement fund in an FLSA collective action); *Pulido*, 2020 WL 13828987, at *1-2 (same); *Cruz*, 2019 WL 4745284, at *9 (approving a combined award for attorneys' fees and costs of nearly 50% of the settlement fund in an FLSA collective action case). Thus, at this preliminary juncture, the Court finds the proposed attorneys' fees to be reasonable.

The settlement also provides for counsel to be reimbursed up to $4,500 in actual expenses. Counsel explains this amount was spent on postage, the filing fee for the complaint, and $3,688.36 on "informational campaigns." (ECF No. 50 p. 4). The Court does not follow what type of "informational campaign" would have been required for a collective of 6 members, but will allow the expenses for purposes of preliminary approval, with direction to counsel to further justify these expenses prior to final approval.

## IX.    Adequacy of Notice and Claims Process

According to the Settlement Agreement, Costco will compile the last-known addresses for the collective members, and then Notices will be mailed via regular mail within twenty-eight days of the Court's preliminary approval. (ECF No. 48 p. 8 ¶¶ 3.1, 3.2). The Settlement Agreement provides a process for tracking down collective members if a Notice is returned as undeliverable. (*Id.* p. 8 ¶ 3.3). Specifically, counsel shall re-mail the Notice if a forwarding address is provided by the post office. (*Id.*). If not, counsel shall conduct a skip trace. The Settlement Agreement provides that the collective members will have 60 days from the date of that Notice to submit a claim form. (*Id.* p. 2 ¶ 1.5). It does not address how that deadline is impacted if a Notice is returned as undeliverable and must be re-sent. For those collective members who opt in to the settlement, Costco will process and issue payments within thirty days of the Court granting final approval of the settlement. (*Id.* p. 10 ¶ 4.8).

The Court finds that, to the extent Costco possesses email addresses for the collective members, the Notice should be sent via both regular mail <u>and</u> email. This will help eliminate the possibility of mail being returned as undeliverable due to an address change and will ensure that more members receive the Notice. Further, should (i) a Notice be returned in the mail as undeliverable, (and no claim form submitted via the email Notice), and (ii) an alternate address be located for the collective member through the skip trace process, then the collective member should have at least 30 days from the mailing of the new Notice to opt-in. The Notice should be revised accordingly.

A draft of the proposed Notice was submitted to the Court for review. (ECF No. 48 at ECF-designated pp. 22-23). The Notice informs the collective members of their rights under the terms of the Settlement Agreement, including their rights to submit a claim, to receive payment, or to decline participation. However, the Court finds the proposed Notice deficient in several respects. First, it does not explain the nature of the claim for unpaid hours. It states only that "[t]he lawsuit alleges that [Costco] violated the [FLSA] and the [NJWHL] by failing to pay for all hours worked." (*Id.*). It does not specify that the allegations are focused on "pre- and post- shift work, including time spent unlocking and opening gates, deactivating and activating alarms, conducting security sweeps, and closing facilities." (ECF No. 49-1 at 1). Given that the settlement requires a waiver of any and all wage and hour claims under the FLSA, NJWHL, and NJWPL, the Notice should provide more detail about the nature of the claims asserted in the lawsuit, so that the collective members can properly consider their options before signing their release.

Second, the Notice does not explain how each collective members' individual share will be calculated. It states only that the collective member will receive a payment "proportionate to the amount of weeks you worked between October 19, 2017 and December 13, 2024, as a non-exempt

supervisor at a MDO in the State of New Jersey." (ECF No. 48 at ECF-designated p. 22). It does not explain that collective members will be compensated 6 minutes per shift at Newark MDOs and 1 minute per shift for other MDOs. (ECF No. 49-1 at 14).

Third, and perhaps most critically, it does not state that up to $17,500 in attorneys' fees, $4,500 in expenses, and $2,500 for a service award to Shah will be deducted from the settlement fund. (ECF No. 48 at ECF-designated pp. 22-23). At a minimum, it should state the amount of attorneys' fees, expenses, and service award that will be requested upon final approval and that these amounts shall be deducted from the settlement fund. This is critical information for collective members when deciding whether to opt in and/or object to the settlement.

Counsel is directed to update the Notice to include this critical information. Further the plan for giving Notice shall be modified to provide that, if the Notice is returned as undeliverable and an updated address is located through the skip trace process, the collective member shall have 30 days from the date of the mailing of the revised Notice to opt-in. Counsel shall submit a revised Notice to the Court by June 10, 2026 for approval. The Court will then issue a separate Order concerning the Notice.

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**, provided the above changes are made to the Notice. The Proposed Order submitted by the parties incorporating this decision, with certain modifications made by the Court, will be entered. The Court shall set a date for a hearing for the final approval of this settlement when the motion for final approval is filed.

$\quad\quad\quad\quad\quad\quad$ /s/ Stacey D. Adams
$\quad\quad\quad\quad\quad\quad$ Hon. Stacey D. Adams
$\quad\quad\quad\quad\quad\quad$ United States Magistrate Judge

Date: May 29, 2026

18